**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**SAN ANGELO DIVISION**

|  |  |  |
|---|---|---|
| **JACK BARNETT POWELL,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **Civil Action No. 6:06-CV-040-C** |
| | § | **ECF** |
| | § | **Referred to the U.S. Magistrate Judge** |
| **MICHAEL J. ASTRUE[1],** | § | |
| **Commissioner of Social Security,** | § | |
| | § | |
| **Defendant.** | § | |

## REPORT AND RECOMMENDATION

This case is before the court upon Plaintiff's complaint filed March 30, 2006, for judicial review of the administrative decision of the Commissioner of Social Security denying Plaintiff's applications for disability insurance benefits under Title II of the Social Security Act. Plaintiff filed a brief in support of his complaint on July 25, 2006, Defendant filed a brief on August 14, 2006, and Plaintiff filed his reply on August 24, 2006. The United States District Judge, pursuant to 28 U.S.C. § 636(b), referred this case to the United States Magistrate Judge for report and recommendation, proposed findings of fact and conclusions of law, and a proposed judgment. This court, having considered the pleadings, the briefs, and the administrative record, recommends that the United States District Judge affirm the Commissioner's decision and dismiss the complaint with prejudice.

---

[1]       Michael J. Astrue has been appointed as the new Commissioner of Social Security, replacing Jo Anne B. Barnhart, effective February 12, 2007, per FED. R. CIV. P. 25(d)(1).

# I. STATEMENT OF THE CASE

Plaintiff filed an application for disability insurance benefits on February 6, 1998, alleging disability beginning February 15, 1992. Tr. 15, 66-68. Plaintiff's applications were denied initially and upon reconsideration. Tr. 15, 44-48, 50-53. Plaintiff filed a Request for Hearing by Administrative Law Judge on August 25, 1998, and this case came for hearing before the Administrative Law Judge ("ALJ") on September 20, 1999. Tr. 15, 54, 460-86. Plaintiff, represented by a non-attorney, testified in his own behalf. Tr. 463-79. Plaintiff's wife, Patsy Powell, also testified. Tr. 480-82. Clinton Wainwright, a vocational expert ("VE"), appeared and testified as well. Tr. 482-86. The ALJ issued a decision unfavorable to Plaintiff on October 1, 1999. Tr. 12-24.

In his opinion the ALJ noted that the specific issue was whether Plaintiff was under a disability within the meaning of the Social Security Act. He found that: Plaintiff met the disability insured status requirements only through June 30, 1997, and Plaintiff had not engaged in substantial gainful activity at any time since June 30, 1997. Tr. 16, 22. Plaintiff has "severe" impairments, including degenerative disc disease in the lumbar spine. Tr. 16-17, 22. Plaintiff's severe impairments, singularly or in combination, were not severe enough to meet or equal in severity any impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1. Tr. 17, 22. Therefore, the ALJ was required to determine whether Plaintiff retained the residual functional capacity ("RFC") to perform his past relevant work or other work existing in the national economy.

The ALJ acknowledged that in making the RFC assessment, he must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence, based on the requirements of Social Security Ruling 96-7p. Tr. 20.

The ALJ found that based on the evidence in the record, Plaintiff's statements concerning his impairments and their impact on his ability to work were not entirely credible. Tr. 19, 22-23.

The ALJ found that Plaintiff could not return to his past relevant work as a tractor-trailer truck driver or an auto mechanic. Tr. 16, 20, 23. He noted that Plaintiff was considered a "younger individual" with an eighth-grade education. 20 C.F.R. §§ 416.963, 416.964; Tr. 21, 23.

The ALJ found that Plaintiff retained the RFC to perform sedentary work activity, limited to jobs that do not require stooping, squatting, crawling, kneeling, or climbing stairs or ladders; that do not require working at unprotected heights or near moving machinery; that do not involve repetitive movements of the feet; and that do provide the option to sit or stand during the performance of work duties. Tr. 20, 23. Having found that Plaintiff could not perform the full range of sedentary work, the ALJ turned to the testimony of the VE in determining whether Plaintiff was capable of making a vocational adjustment to other work despite his severe impairments. Tr. 23-24. He relied upon the testimony of the VE who indicated that a hypothetical person of Plaintiff's age, with Plaintiff's RFC and vocational history, could perform work which exists in the national economy, including the jobs of electronics assembler, with 8,900 jobs in Texas and 139,600 jobs nationally; lock assembler, with 10,000 jobs in Texas and 151,400 jobs nationally; and mechanic driller, with 15,400 jobs in Texas and 210,000 jobs nationally. *Id*. The ALJ, therefore, concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time through the date of his decision. Tr. 22, 24.

Plaintiff submitted a Request for Review of Hearing Decision/Order on October 22, 1999. Tr. 10-11. The Appeals Council issued its opinion and denied Plaintiff's request, indicating that although it had considered the contentions raised in Plaintiff's Request for Review, it nevertheless concluded that there was no basis for changing the ALJ's decision. Tr. 7-9. The ALJ's decision, therefore, became the final decision of the Commissioner.

Plaintiff filed another application for disability insurance benefits on June 5, 2003, alleging disability beginning June 30, 1997, an onset date amended at the hearing with the concurrence of counsel. Tr. 34. Plaintiff's applications were denied initially and upon reconsideration. Tr. 34, 162-65, 168-72. Plaintiff filed a Request for Hearing by Administrative Law Judge on January 11, 2004, and this case came for hearing before the ALJ on May 26, 2005. Tr. 34, 152-53, 500-19. Plaintiff, represented by a non-attorney, testified in his own behalf. Tr. 34, 504-14. Carol Bennett, a VE, appeared and testified as well. Tr. 514-18.

The ALJ noted that the current application would have been appropriately denied under the doctrine of *res judicata* because the issue of disability had been previously and unfavorably adjudicated through the date last insured. However, he noted that changes in the regulations governing musculoskeletal and mental impairments required that the issue of disability be re-visited through the date last insured. Tr. 34.

On July 29, 2005, the ALJ again issued a decision unfavorable to Plaintiff. Tr. 31-41.

In his opinion the ALJ noted that the specific issue was whether Plaintiff was under a disability within the meaning of the Social Security Act. He found that: Plaintiff met the disability insured status requirements only through June 30, 1997, and Plaintiff had not engaged in substantial gainful activity at any time since June 30, 1997. Tr. 36. Plaintiff has "severe" impairments, including degenerative lumbar disc disease. *Id.* There was no evidence of a severe mental impairment. *Id.* Plaintiff's severe impairments, singularly or in combination, were not severe enough to meet or equal in severity any impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1. *Id.* Therefore, the ALJ was required to determine whether Plaintiff retained the residual functional capacity ("RFC") to perform his past relevant work or other work existing in the national economy.

The ALJ acknowledged that in making the RFC assessment, he must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence, based on the requirements of Social Security Ruling 96-7p. Tr. 38.

The ALJ found that based on the evidence in the record, Plaintiff's statements concerning his impairments and their impact on his ability to work were not entirely credible. Tr. 37, 40.

The ALJ found that Plaintiff could not return to his past relevant work. Tr. 35, 40. He noted that Plaintiff was considered a "younger person" with a 10th grade education. 20 C.F.R. §§ 416.963, 416.964; Tr. 39-40.

The ALJ found that Plaintiff retained the RFC to perform a modified range of sedentary work activity, limited to jobs that do not require more than occasional stooping, balancing, crouching, crawling, or kneeling; that do not require more than occasional climbing of stairs and ramps; that do not require working at unguarded heights or near unguarded hazardous mechanical equipment; that do not require climbing scaffolds, ladders, and ropes; that do not require sitting without the opportunity to occasionally stand in addition to a lunch and the normal legal breaks during the workday; that do not require standing/walking for more than 4 hours out of an 8-hour workday, and that do not require working above shoulder level with the upper extremities or pushing/pulling with the feet. Tr. 38. Having found that Plaintiff could not perform the full range of sedentary work, the ALJ turned to the testimony of the VE in determining whether Plaintiff was capable of making a vocational adjustment to other work despite his severe impairments. Tr. 39, 41. He relied upon the testimony of the VE who indicated that a hypothetical person of Plaintiff's age, with Plaintiff's RFC and vocational history, could perform work which exists in the national economy, including the jobs of inspector, with 43,000 jobs nationally; and assembler, with 160,000

jobs nationally. *Id.* The ALJ, therefore, again concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time on or before June 30, 1997. Tr. 40-41.

Plaintiff submitted a Request for Review of Hearing Decision/Order on September 28, 2005. Tr. 29-30. The Appeals Council denied Plaintiff's request and issued its opinion on January 31, 2006, indicating that although it had considered the contentions raised in Plaintiff's Request for Review, it nevertheless concluded that there was no basis for changing the ALJ's decision. Tr. 25-28. The ALJ's decision, therefore, became the final decision of the Commissioner.

On March 30, 2006, Plaintiff commenced this action which seeks judicial review of the Commissioner's decision that Plaintiff was not disabled.

## II.   STANDARD OF REVIEW

An applicant may obtain a review of the final decision of the Commissioner by a United States District Court. 42 U.S.C. § 405(g). The court's review of a denial of disability benefits is limited to determining whether the decision is supported by substantial evidence and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). The court will not re-weigh the evidence, try the questions *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson,* 309 F.3d at 272. "[C]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Id.* (quoting *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000)).

In order to qualify for disability insurance benefits or supplemental security income, a claimant has the burden of proving that he or she has a medically determinable physical or mental

impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit. *Newton,* 209 F.3d at 452. *See* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1527(a)(1).

The Commissioner follows a five-step process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. § 404.1520; *Masterson*, 309 F.3d at 271; *Newton*, 209 F.3d at 453. In this case, the ALJ found at step 5 that Plaintiff was not disabled because he retained the ability to perform work in the national economy. Tr. 39, 41.

## III.  DISCUSSION

Plaintiff claims that the ALJ's decision is not supported by substantial evidence in two respects. First, he argues that there is substantial evidence in the record to show that his impairments meet or equal in severity Sections 1.04 or 1.05 of the Listing of Impairments. Second, Plaintiff argues that the RFC determination is not supported by substantial evidence in the record because the ALJ erred by failing to make a function-by-function assessment of his ability to perform the limited range of light sedentary work identified by the ALJ.

**A.     Whether the ALJ erred in finding that Plaintiff's impairments did not meet or equal in severity Sections 1.04 or 1.05 of the Listing of Impairments.**

Plaintiff argues that the ALJ erred in finding that his impairments did not meet or equal in severity any impairment in the Listing of Impairments. He argues that the medical evidence of record demonstrates that his impairments satisfy or are equivalent to the requirements of Sections 1.04 or 1.05 of the Listing of Impairments. The ultimate issue is whether the ALJ's decision is supported by substantial evidence. The court, therefore, must review the record to determine whether it "yields such evidence as would allow a reasonable mind to accept the conclusion reached by the ALJ." *Loza v. Apfel,* 219 F.3d 378, 393 (5th Cir. 2000).

As an initial matter, the court addresses the appropriate section of the Listing of Impairments under which Plaintiff's applications were considered. In his brief Plaintiff argues that the applicable rule was § 1.05, which was in effect on June 30, 1997, the alleged onset date. As the Defendant correctly notes, when the Revised Medical Criteria for Determination of Disability, Musculoskeletal System and Related Criteria rules went into effect, the new Listings were meant to "apply [] to new applications filed on or after the effective date of the rules and to other claims described in the preamble." *See* 66 Fed. Reg. 58010. These rules became effective on February 19, 2002. *Id*. Plaintiff filed his application on June 5, 2003 (Tr. 201), and thus the new § 1.04 of the Listing of Impairments, 20 C.F.R. Pt. 4, Subpt. P, App. 1, was the appropriate Listing relevant to his claims. The ALJ noted, and the record demonstrates, that Plaintiff filed an earlier application which was denied initially and upon reconsideration by another ALJ on October 1, 1999. Tr. 34, 12-24. The ALJ in this case noted in his July 29, 2005, decision that the current application would have been appropriately denied under the doctrine of *res judicata* because the issue of disability had already been previously adjudicated through the date last insured. Tr. 34. However, the ALJ noted that changes in the rules required that the issue of disability be revisited under the new standards through the date last insured. The court concludes that § 1.04 of the Listing of Impairments that became effective on February 19, 2002, is the appropriate section of the new Listing of Impairments to evaluated Plaintiff's claims of disability.

In order to obtain a determination of disabled under the Listing of Impairments, an applicant must show that his impairments meet or equal one of the listings in appendix 1 of 20 CFR Part 404. To meet the listing under § 1.04, the Plaintiff must show that he has

> [d]isorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord [along w]ith:

A.    Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or

B.    Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or

C.    Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b."

*See* 20 C.F.R. Part 4, Subpt. P, App. 1, §1.04.  Plaintiff specifically argues that he has met the criteria of § 1.04 A and has therefore demonstrated presumptive disability.

The ALJ determines at step 3 of the 5-step sequential analysis whether a claimant's severe impairments meet or equal one or more of the Listings.  At step 3, the burden of proof rests with a claimant.  Ultimately, the claimant has the burden of proving that his impairment or combination of impairments meets or equals a listing.  20 C.F.R. § 404.1520(d); *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990). That burden is to provide and identify medical signs and laboratory findings that support *all* criteria for a step 3 impairment determination. *McCuller v. Barnhart,* 72 Fed.Appx. 155, 158 (5th Cir. 2003); *Selders,* 914 F.2d at 619; 20 C.F.R. § 404.1526(a).  If a claimant fails to provide and identify medical signs and laboratory findings that support all criteria of a Listing, the court must conclude that substantial evidence supports the ALJ's finding that the required impairments for any Listing are not present. *Selders,* 914 F.2d at 620.  To meet a listed impairment, the claimant's medical findings (i.e., symptoms, signs, and laboratory findings) must match those described in the listing for that impairment. 20 C.F.R. §§ 404.1525(d), 404.1528; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

The ALJ found, and the medical evidence of record indicates, that Plaintiff had degenerative disc disease during the relevant period. Tr. 36, 101. Plaintiff argues that there is substantial evidence in the record demonstrating that he met the remaining criteria of § 1.04 A of the Listing of Impairments prior to the expiration of his insured status.

Dr. Edward Brandecker indicated that upon examination on May 29, 1997, Plaintiff was able to flex forward 45 degrees, extension was 15 degrees, left and right lateral bending was 20 degrees. Tr. 99. Cervical range of motion revealed 35 degrees of flexion, 45 degrees of extension, left head rotation of 60 degrees, and right head rotation of 45 degrees. *Id*. He noted that Plaintiff's deep tendon reflexes were 2+ and symmetric with normal muscle tone. Tr. 100. Dr. Brandecker noted that sensory examination revealed diminished pin appreciation in a socking distribution in the left lower extremity, although vibratory sensation was intact at the great toes. *Id*. Dr. Brandecker indicated that motor testing did not reveal any focal weakness. *Id*. Dr. Brandecker opined that "[i]t is unclear whether there are disc herniations in the lumbar spine verses degenerative change." *Id*. He opined that Plaintiff's "sensory complaints and findings are non-radiuclar dermatomal." He also opined that Plaintiff "shows no muscle weakness or atrophy." *Id*. Dr. Brandecker opined that Plaintiff did not show any lasting radicular findings, that he was most limited by his chronic pain condition, and that Plaintiff appeared to have "functional sitting and standing tolerances, intact coordination of his hands, fine motor skills, and ability to handle light objects." *Id*. In making these findings, Dr. Brandecker referred to the x-ray report of the same date. *Id*.

Plaintiff argues that Dr. Gary Butka's notation of a 2 cm and 2.5 cm difference in measurement between his right and left thighs and calves  is "by definition atrophy." Pl. Reply at 9. Section 1.04 A of the Listing of Impairments requires medical evidence of "motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss." 20 C.F.R. Pt. 4, Subpt. P, App. 1, § 1.04 A. Atrophy is defined as "[a] wasting of tissues, organs, or

the entire body, as from death and reabsorption of cells, diminished cellular proliferation, decreased cellular volume, pressure, ischemia, malnutrition, lessened function, or hormonal changes."[2] Plaintiff notes that the AMA Guides to the Evaluation of Permanent Impairment provides that "Atrophy is measured with a tape measure at identical levels on both limbs," and further provides that "the difference in circumference should be 2 cm." Pl. Brief at 16.

However, Dr. Butka did not indicate or opine that Plaintiff had experienced atrophy of his legs but indicated the specific measurements. Tr. 283. He noted that Plaintiff hobbles a bit, exhibits the gel phenomenon after sitting for a while, knees have a good range of motion, deep tendon reflexes are present and normal, he could not stand on his toes or heels, he could walk a straight line, and rapid alternating movements are normal. *Id.* Dr. Butka did opine that Plaintiff's legs were of unequal length. His diagnostic impression was low back pain with degeneration of L2-3, mild protrusion at L2-3, disc bulge at L3-4, and post-laminectomy defect with associated scar formation. *Id.* Dr. Butka's examination occurred on June 17, 1998. *Id.* This was after Plaintiff's last date insured. Another notation by Dr. Butka, dated October 27, 1999, indicates no atrophy. Tr. 273. Plaintiff's later treatment records, from the VA provider, which date from well after the date last insured, indicate no evidence of atrophic changes. Tr. 350.

Plaintiff's treating specialist, Dr. Quirico Torres, indicated on February 27, 1998, that Plaintiff was ambulatory with a steady gate. Tr. 262. He noted that upon examination, he did not find any motor deficit on either the upper or lower extremity, with near normal mobility of both hips, and no sensory deficit on either the upper or lower extremities. *Id.*

While Plaintiff argues that the ALJ wholly failed to consider in his decision the evidence of Jack Powell's right leg atrophy of 2 cm noted by Dr. Butka, the court notes that Dr. Butka did not

---

[2]     STEDMAN'S MEDICAL DICTIONARY (27th ed. 2000) at 165.

opine that the measures he took demonstrated atrophy, his later treatment notes indicate no atrophy, this evidence is dated after Plaintiff's last date insured, and none of his other treatment providers indicate or opined that Plaintiff experienced atrophy, as described in § 1.04 A of the Listing of Impairments. Additionally, Dr. Brandecker also found no evidence of muscle weakness or atrophy prior to the expiration of Plaintiff's insured status. Tr. 100. Shortly after the expiration of his insured status, Plaintiff's own treating specialist noted no motor or sensory deficits. Tr. 262. The post-insured-status notation of the VA provider also indicates no atrophic changes. Tr. 350. "The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record." *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) (citing *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)).

> Section 1.00 E provides that in evaluating the criteria of the musculoskeletal Listings,
>
> a report of atrophy is not acceptable as evidence of significant motor loss without circumferential measurements of both thighs and lower legs, or both upper and lower arms, as appropriate, at a stated point above and below the knee or elbow given in inches or centimeters. Additionally, a report of atrophy should be accompanied by measurement of the strength of the muscle(s) in question generally based on a grading system of 0 to 5, with 0 being complete loss of strength and 5 being maximum strength. A specific description of atrophy of hand muscles is acceptable without measurements of atrophy but should include measurements of grip and pinch strength.

20 C.F.R. Pt. 4, Subpt. P, App. 1, § 1.00 E. Moreover, diagnosis and evaluation of musculoskeletal impairments should be supported by detailed descriptions of the joints, "including ranges of motion, condition of the musculature (e.g., weakness, atrophy), sensory or reflex changes, circulatory deficits, and laboratory findings, including findings on x-ray or other appropriate medically acceptable imaging." *Id*. at § 1.00 C.

Plaintiff bears the burden of proving that his impairment or combination of impairments meets or equals the listings at step 3 of the sequential evaluation process. 20 C.F.R. § 404.1520(d);

*Selder*, 914 F.2d at 619 (citing *Sullivan*, 493 U.S. at 521). Plaintiff also argues that his impairment is of sufficient medical severity to constitute medical equivalence. He must provide medical findings that support each of the criteria for the equivalent impairment determination. *Id*. The evidence of record does not include medical findings to support each of the criteria of § 1.04 A of the Listing of Impairments, nor does it contain the type of detailed description of muscle atrophy as described in § 1.00 E. Plaintiff failed to carry his burden at step 3 to show that he met or equaled the criteria of the appropriate section of the Listing of Impairments. I find that the ALJ did not err in finding that Plaintiff's impairments did not meet or equal in severity § 1.04, or any other section of the Listing of Impairments, and his finding is supported by substantial evidence in the record.

Plaintiff also asks that the court grant him retroactive relief in the form of disability benefits starting from his alleged onset date. Having considered the evidence of record, the court is also unable to find definitively that Plaintiff has shown that his impairments met or equaled a Listing in the Listing of Impairments for the relevant period. Therefore, a reversal with directions to award benefits is not proper. *See McQueen v. Apfel*, 168 F.3d 152, 156 (5th Cir. 1999). The cumulative effect of the evidence in this case does not meet the very high burden of establishing "disability without any doubt." *See Poe v. Comm'r of Soc. Sec.*, 2003 U.S. Dist. LEXIS 21307, 22-23 (N.D. Tex. 2003).

**B.      Whether the ALJ applied incorrect legal standards in making his RFC determination.**

Plaintiff further argues that the ALJ applied incorrect legal standards in making his RFC assessment by failing to make a function-by-function assessment of his ability to perform work related activities. Plaintiff argues that the ALJ failed to address the concerns of SSR 96-8p and SSR 96-9p in determining Plaintiff's RFC, specifically his ability to perform all of the strength demands of sedentary work. Plaintiff specifically alleges that the ALJ erred by failing to fully address the

amount of weight he could lift both occasionally and frequently, his ability to push/pull with the upper extremities, how many hours he could sit out of an 8-hour workday, and the frequency and length of time of the sit/stand option. Plaintiff further argues that the ALJ failed to set out whether Plaintiff could perform basic work activities on a regular and continuing basis.

The ALJ found that Plaintiff retained the RFC for a limited range of sedentary level work. He noted that work at the sedentary level requires lifting no more than 10 pounds at a time and occasionally lifting or carrying articles such as files, ledgers, and small tools. Tr. 36. He noted that a certain amount of walking and standing is often necessary and are "required occasionally." *Id.* He found that the Plaintiff's ability to perform a full range of sedentary work was reduced by non-exertional limitations and that Plaintiff should not be required to: stoop, balance, crouch, crawl, kneel, or climb stairs and ramps more than occasionally; climb scaffolds, ladders, or ropes; sit without the opportunity to occasionally stand in addition to a lunch and the normal legal breaks during the workday; stand/walk more than 4 hours in an 8-hour workday; work above shoulder level with the upper extremities; push or pull with the feet; or work at unguarded heights or near unguarded hazardous mechanical equipment. Tr. 38.

The term "residual functional capacity assessment" describes an adjudicator's finding about the ability of an individual to perform work-related activities. Social Security Ruling 96-5p (July 2, 1996) ("SSR 96-5p"). The RFC assessment is based upon "*all* of the relevant evidence in the case record," including, but not limited to, medical history, medical signs, and laboratory findings; the effects of treatment; and reports of daily activities, lay evidence, recorded observations, medical source statements, and work evaluations. Soc. Sec. Ruling 96-8p (July 2, 1996) ("SSR 96-8p") (emphasis in original). The ALJ is responsible for determining a claimant's RFC. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). In making the RFC assessment and in determining the limitations

imposed by a claimant's impairment(s), the ALJ is instructed to consider the entire record. SSR 96-8p. As noted in SSR 96-8p,

> RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule. RFC does not represent the least an individual can do despite his or her limitations or restrictions, but the most.

SSR 96-8p. This ruling further provides that exertional capacity involves seven strength demands and that each function must be considered separately. The ALJ must discuss the claimant's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis. Social Security Ruling 96-9p provides that the RFC assessment is a function-by-function assessment.

> The regulations provide that:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 CFR § 404.1567(a). The ALJ noted these requirements and further found that Plaintiff could perform such work, subject to the noted non-exertional limitations. In so finding, the ALJ appropriately indicated in his RFC assessment Plaintiff's ability to lift weight in performing work activity. Sedentary work involves the ability to sit for approximately six hours of an 8-hour workday. *See* SSR 96-9p. The ALJ found no other limitations on Plaintiff's ability to sit. Therefore, the ALJ also appropriately addressed Plaintiff's ability to sit in making his RFC assessment.

The record demonstrates that the ALJ consulted a VE to determine whether there existed a significant number of jobs in the national economy that a person of Plaintiff's age, vocational and educational history, and RFC could perform. A VE is called to testify because of his familiarity with

job requirements and working conditions. *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995) (citing *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir.1986)). "The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." *Id.* In testifying, a VE "is able to compare all the unique requirements of a specified job with the particular ailments a claimant suffers in order to reach a reasoned conclusion whether the claimant can perform the specific job." *Fields*, 805 F.2d at 1170. Here, the VE testified that there were jobs that such a person could perform, and the ALJ relied upon such testimony in making his step 5 finding.

Plaintiff argues that the ALJ erred by failing to address the length of time needed to stand in assessing his RFC. The record demonstrates that the ALJ incorporated a limitation into his RFC assessment not requiring Plaintiff to sit without the opportunity to stand occasionally in addition to the normal lunch and legal breaks during the workday and not requiring that Plaintiff stand more than 4 hours out of an 8-hour workday. Tr. 38, 515. The ALJ elicited testimony from the VE to determine the degree to which the occupational base was eroded by the additional limitations incorporated into this RFC finding for a limited range of sedentary level work. *Id.* As the Defendant correctly notes, the terms "occasional" and "occasionally" are defined in the *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* at appendix C-3 (U.S. Dept. Of Labor, Employment and Training Administration, 1993) ("SCO"). SSR 00-4p (December 4, 2000), notes that the Commissioner will take administrative notice of "reliable job information" available from various publications, including the SCO. Here, the ALJ appropriately discussed Plaintiff's ability to sit and stand, including the frequency with which Plaintiff may need to stand (i.e., to sit without the opportunity to stand occasionally in addition to the normal lunch and legal breaks during the workday and not requiring that Plaintiff stand more than 4 hours out of an 8-hour workday) and appropriately relied upon the testimony of the VE to determine the degree to

which the additional limitations eroded the availability of jobs. Tr. 38, 515. The ALJ's RFC assessment thus met the requirements of SSR 96-9p, by appropriately indicating the frequency of Plaintiff's need to stand in addition to sitting. In any case, the ALJ consulted a VE to determine the extent of erosion as a result of the need to stand in addition to sitting, the specific concern noted by SSR 96-9p. *See* SSR 96-9p (noting that "[i]t may be especially useful in these situations to consult a vocational resource in order to determine whether the individual is able to make an adjustment to other work."). Neither SSR 96-8p nor 96-9p require that the ALJ specify the amount of time that Plaintiff is required to stand, each time he stands, as Plaintiff argues.

Plaintiff argues that the ALJ did not consider his ability to perform sustained work activities in this case. Of course, the RFC assessment itself represents the most that a claimant can do on a regular and continuing basis. SSR 96-8p. Here, the ALJ discussed Plaintiff's ability to perform work activities. The ALJ is not required to use the term "regular and continuing basis," as the ability to perform work on a regular and continuing basis is inherent in the definition of RFC. *See Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir. 2003) (implying that the RFC assessment includes the ability to perform such work activity on a regular and continuing basis as set forth in SSR 96-8p); *see also, Pekrul v. Barnhart*, 153 Fed. Appx. 329, 332, 2005 U.S. App. LEXIS 24479 (5th Cir. Nov. 10, 2005) (noting that "[t]he ALJ's determination that [the claimant] had the RFC to perform sedentary work is a determination that he is able to sustain work-related activities on a 'regular and continuing basis,' meaning '8 hours a day for 5 days a week.'").

Plaintiff correctly notes that the ALJ did not specifically address Plaintiff's ability to push or pull. The court notes that the ALJ found a specific limitation on Plaintiff's use of the upper extremities and the ability to work above shoulder level with the upper extremities and did not find or address any limitation on Plaintiff's ability to push or pull with his upper extremities. Even assuming that the ALJ failed to appropriately make a function-by-function assessment with regard

to Plaintiff's RFC, by failing to specifically address Plaintiff's ability to push or pull, thereby violating SSR 96-8p, a remand is not necessarily required. Social Security Rulings are agency rulings "published under the authority of the Commissioner of Social Security and are binding on all components of the Administration." 20 C.F.R. § 422.408 (1980); *Heckler v. Edwards*, 465 U.S. 870, 873 n.3 (1984); *Hall v. Schweiker*, 660 F.2d 116, 119 n.4 (5th Cir. [Unit A] 1981) (*per curiam*). An agency must follow its own procedures, even if those procedures are more rigorous than what would otherwise be required. *Newton*, 209 F.3d at 459. Should the agency violate its internal rules and prejudice results, the proceedings are tainted and any action taken cannot stand. *Hall*, 660 F.2d at 119. However, rulings lack force of law and are not binding on courts. *Id.* Thus, the ALJ's violation of SSR 96-8p does not *ipso facto* mean that the Commissioner's decision must be reversed; rather, the claimant must demonstrate that he was prejudiced by the error. *Id.* The appropriate question is thus whether such failure is prejudicial.

A harmless error analysis applies to administrative failure to comply with a regulation. *See Frank v. Barnhart,* 326 F.3d 618 622 (5th Cir. 2003). Violation of a social security ruling merits remand only when a claimant affirmatively demonstrates prejudice. *Hall,* 660 F.2d at 119. The two concepts are closely related. Prejudice is established by showing that additional evidence could have been produced and "that the additional evidence might have led to a different decision." *Newton,* 209 F.3d at 458. An error is harmless unless there is reason to think that a remand might lead to a different result. *Fisher v. Bowen,* 869 F.2d 1055, 1057 (7th Cir. 1989). As such, improprieties noted by Plaintiff will constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision. *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988).

Plaintiff does not argue, nor does the record demonstrate, that Plaintiff's ability to push or pull is limited by his impairments. SSR 96-9p provides that "[l]imitations or restrictions on the

ability to push or pull will generally have little effect on the unskilled sedentary occupational base." Therefore, even if the ALJ erred by failing to comply with the requirements of SSR 96-8p by specifically addressing Plaintiff's ability to push or pull with the upper extremities, such error is not prejudicial and does not require a remand in this case.

Plaintiff further argues that the ALJ erred by failing to address inconsistencies in the evidence, specifically, the measurement noted by Dr. Butka, which Plaintiff claims demonstrates atrophy. First, the court notes, as discussed above, that Dr. Butka indicated a raw measurement and did not opine that Plaintiff had atrophy. Indeed, a subsequent note specifically indicates no atrophy.

The task of weighing the evidence is the province of the ALJ. *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001). The relative weight to be given these pieces of evidence is within the ALJ's discretion. *Id.* The ALJ properly exercised his responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into his RFC assessment that were most supported by the record. *Muse*, 925 F.2d at 790. The evidence of record does not demonstrate that additional limitations, beyond those already incorporated into the RFC assessment, were required due to the measurement difference in Plaintiff's legs. The ALJ did not err by failing to incorporate any such limitation into the RFC assessment and did not err by failing to address this alleged inconsistency in the evidence.

The ALJ reported that he carefully considered the entire record. He indicated that he considered all medically determinable impairments. He discussed Plaintiff's testimony concerning his impairments and their impact on his ability to perform work activity. He considered and discussed the degree to which pain limited Plaintiff's ability to perform work activity and to functional loss which such pain may cause. The ALJ discussed and considered the medical opinions which reflected judgments about the nature and severity of Plaintiff's limitations pursuant to the regulations, specifically noting the medical evidence of Plaintiff's back and related

impairments, including the evidence of mild posterior tibial neuropathy. Based on his extensive review of the evidence, including the combined adverse effects of all of the impairments, he made his finding of Plaintiff's RFC, concluding that he retained the ability to perform sedentary work with additional limitations. The court finds that the ALJ considered the effect of Plaintiff's combined impairments, and he sufficiently addressed and discussed Plaintiff's ability to perform work activities in making his RFC assessment. The ALJ did not err by failing to address inconsistencies in the evidence. To the extent that the ALJ may have erred by failing to specifically address Plaintiff's ability to push and pull with the upper extremities, the court finds that such error was not prejudicial. Therefore, the court finds that the ALJ's opinion, including his step 3 finding that Plaintiff's impairments did not meet or equal § 1.04 A of the Listing of Impairments, his RFC finding, and his step 5 determination that Plaintiff retained the RFC to perform work which exists in significant numbers in the national economy, is supported by substantial evidence. I further find that neither reversal nor remand is appropriate in this case, either for an immediate award of benefits or for additional proceedings.

## IV.    CONCLUSION

Based upon the foregoing discussion of the issues, the evidence, and the law, this court recommends that the United States District Judge affirm the Commissioner's decision and dismiss the Plaintiff's complaint with prejudice.

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1) and Rule 4(a) of Miscellaneous Order No. 6, For the Northern District of Texas, any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within 11 days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District

Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150, 106 S. Ct. 466, 472 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within 11 days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the United States Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

DATED this 24thday of August, 2007.

**PHILIP R. LANE**
**UNITED STATES MAGISTRATE JUDGE**